**In the United States District Court for the District of Kansas**

Jane Doe,[1]                          )

      Plaintiff,                    )

v.                                    )   **Civ. Act.**

                                    )   **No.   2:23-cv-02043-DDC-TJJ**

Garden City, Kansas,                  )   **Verified Complaint**

      Defendant                     )   **Jury Trial Requested**

_____       )

FILED
U.S. District Court
District of Kansas

FEB 02 2023

Clerk, U.S. District Court
By _____ Deputy Clerk

## **COMPLAINT**

Comes now, Jane Doe (Plaintiff's identity separately listed), and her cause of action

against Defendant, and states as follows:

### **INTRODUCTION**

This action seeks compensatory and punitive damages of more than $100,000.00 and

preliminary and permanent injunctive relief on claims brought by Plaintiff Judge Jane Doe

(hereinafter "Judge Doe"), against the City of Garden City, Kansas, and its acting official for

discrimination in employment on the basis of disability, retaliation for exercising the protected

right of opposing such discrimination, the Equal Pay Act, and such officials conspired to violate

these Judge Doe's protected Constitutional rights.   Judge Doe also has state tort claims which

have been served upon Garden City, Kansas, and will amend her complaint to include those if

---

[1] The real Plaintiff in this case is Kristin E. Kandt.  This case is full of private medical information, and disclosure of such would be a violation of HIPAA, as it concerns a violation of the ADA and long term COVID, etc.  Plaintiff, as the former municipal judge of Garden City, asks to be kept anonymous, as this case involves very personal medical information and a violation of the ADA, and her medical information includes but is not limited to a severe chronic illness, long COVID, and severe emotional distress which has turned into disabling depression.

those Garden City fails to satisfy within the statutory allotted timeframe to approve or deny such claims for relief.

## JURISDICTION AND VENUE

This Court has original and subject matter jurisdiction over this matter by virtue of the fact that Judge Doe was an employee of the City of Garden City Kansas (hereinafter "Garden City"), and her claims are for violation of Section 504 of the Rehabilitation Act/American with Disabilities Act, 29. U.SC. § 794, and 42 U.S.C. §§ 12131–12134, et seq., as well as the Equal Pay Act, 29 U.S.C. 206, by Garden City officials acting within the official capacity. This court also has diversity jurisdiction as Judge Doe is a permanent resident of the state of Missouri (and only a temporary resident of Kansas when the discriminatory acts occurred); and the City of Garden City is in the Federal District of Kansas – the place where its official committed discriminatory actions upon the Plaintiff, Judge Doe.

## PARTIES

1.  Plaintiff Jane Doe is a resident of Kansas City, Missouri, and had a secondary residence in Garden City, Kansas, to serve as their solo Municipal Judge and simultaneously as the solo Finney County Counselor.

2.  The City of Garden City is the Defendant, and its officials City Officials who discriminated against Judge Doe including the following:

    a.  Jennifer Cunningham, who was the Assistant City Manager, and whose responsibilities included being administrator of the Garden City Municipal Court. She was not Judge Doe's supervisor, but she functioned as such and told Judge

Does' supervisor what to do or not do in retaining Judge Doe. Jennifer Cunningham is now the City Attorney at $170 an hour, the Municipal City Prosecutor at 200k a year salary, and the USD (Garden City School District) attorney at $180 an hour. She and her husband, who also previously worked for the city of Garden City, run a law firm, (Doering, Grisell, and Cunningham) who does all this business for Garden City, Kansas at the expense of the taxpayers.

b.  Randy Grisell was the then-City Attorney, who retired on December 31, 2021. He was also the Attorney for the School District and Garden City Community College. He had no contract with the City and made untold hundreds of thousands of dollars at the taxpayers' expense, sometimes in conflicting situations, in all three jobs, for over 33 years. This unholy and nepotistic alliance continues through Cunningham and the City. Jennifer Cunningham's husband, Jake – another Partner at Doering and Grisell, also was a previous City employee.

c.  Matt Allen is the City Manager of Garden City and was Judge Doe's supervisor. He is the one who gives the city's business to Doering and Grisell (and Cunningham). Other than in passing one or two times, a brief period where he sat in to watch Judge Doe, Judge Doe never saw or heard from Matt Allen unless she contacted him, until her termination meeting on February 4, 2021. Matt Allen took all direction from Jennifer Cunningham, who was not Judge Doe's supervisor, and who is now the Municipal Prosecutor at 200k, in addition to her other roles.

d. Allie Medina was then the Human Resources Manager throughout Judge Doe's tenure at Garden City as Judge and was allegedly forced to resign after Judge Doe's termination in August 2021 for an unspecified reason.

e. The Garden City Council, who approved Doe's termination, and who she never even met or spoke with, included at the time - in addition to Cunningham, Randy Grissell, Matt Allen, and Council Members Deb Oyler, Shannon Dick, Manny Ortiz, Roy Cessna (also Garden City School District "Information Officer"), and Troy Unruh, a Pastor and former mayor who still retains his position after a confessed conviction of embezzlement at another agency. Celyn Hurtado, Clerk of Garden City, is and was a member of this Council.

### STATEMENT OF FACTS

1. Judge Jane Doe had been an attorney for over twenty-five years when she applied to an opening advertised in the Kansas Bar Magazine for Municipal Judge of Garden City, Kansas on or about in September 2019. Judge Doe had a long-distinguished resume' with many awards, had worked for several judges – both Section III and administrative, and had graduated from Duke University, Georgetown University Law School, and was Georgetown's mock trial winner, moot court semi-finalist, and had been twice published, amongst other distinguishing attributes. She also has a CPA. Judge Doe has an invisible disability as well – primary immune deficiency, and she needs monthly infusions of gamma globulin – human immune t-cells extracted from the blood (IVIG) to keep a base-line wellness and stay relatively immune from secondary

4

infections.  Otherwise, she is very fatigued, besieged by secondary infections, and was at an extremely high-risk for death when COVID emerged.

2. Judge Doe was first interviewed over the phone by Cunningham, with the County Council in the background – for a combined position of Municipal Judge and solo County Civil Council.  Cunningham told Judge Doe that in order to "justify," a full-time judge position, she had to work full time and share her time as County Counselor, even though these two positions had never been combined, and even though previous judges had been paid at a full-time rate, and the judge that succeeded Judge Doe had a higher salary and was paid at a full time rate.

3. After this interview, Judge Doe was invited to do a second interview in Garden City, Kansas.  As she was already scheduled to travel in South Africa during November 2019, Judge Doe was asked to come down to Garden City, Kansas to do a full day of interviews and computer testing that mimicked timed bar exam questions.  She did so on or about December 13, 2019 and was given an offer before she had a chance to find housing – which – as was known and not revealed to her – more expensive than Kansas City and Judge Doe needed to maintain her home in Kansas City as well as a new residence in Garden City. Judge Doe was not reimbursed for her transportation (this last part much later) or for a good portion of her stay, even though she was required to do so to interview.  City Council members routinely get 5,000$ taxpayer money to travel and stay in Overland Park, Kansas for 3-day municipal meetings.  This is

indicative of how Judge Doe was treated during her employment. At this interview Cunningham also told Judge Doe she would also receive an average of around 13% raise per year.

4. Judge Doe was paid 94000k as an annual salary for both jobs, after Allie Medina said they would not pay her more than 90k (even though Jennifer Cunningham said over the phone that the position paid at least 95000k). Judge Doe later found out that her job was paid half from the city (47k) and half from the County (47k). Judge Doe also found out while working that the Prosecutor, who was under age forty, nondisabled male who had a close relationship from law school with Jennifer Cunningham, was making over twice that of Judge Doe – or 200k.

5. Judge Doe was told that she was being paid top dollar that the city could afford by both Medina and Cunningham – and that they offered top insurance benefits. After Judge Doe started, the insurance company refused to pay for her IVIG – making her restart testing – a process she had already gone through in just prior to starting in both 2018 and 2019 – and would not pay for her IVIG. Judge Doe started to immediately become weak and sick – and orally requested accommodations – namely to start court later from 8:30 to 10:30 am, as Judge Doe was suffering from nonrestorative sleep and horrible fatigue from lack of treatment, as well as chronic colds and infections. Jennifer Cunningham refused to consider such accommodations, and wrote Judge Doe not one, but two emails stating that she would refuse to even consider such

accommodations, despite the lack of insurance treatment for a very serious chronic illness and would only consider such at the end of the year when she felt that court was more caught up from COVID (as COVID happened while Judge Doe was not receiving her treatment, putting her at serious risk of death).

6.  Judge Doe orally sked for accommodations due to lack of treatment for her primary immune deficiency, as she was becoming weak, and tired and sickly. Primarily, Judge Doe only asked for a schedule accommodation, and Jennifer Cunningham repeatedly denied any consideration of such, sending not one but two emails showing her absolute refusal to even consider such a change. Cunningham indicated she might consider this change after Judge Doe worked one year.

7.  Despite failure to accommodate Judge Doe throughout her tenure as Judge for her primary immune deficiency and failure to treat it to keep her well and functioning, and then contraction of COVID developing into long COVID, Judge Doe accommodated Jennifer Cunningham for her pregnancy by agreeing to start a month earlier than for which she was ready, starting the job on February 3, 2020, as Jennifer Cunningham had "scheduled" her C-Section on February 20, 2020 and wanted to train Judge Doe. Cunningham had never been a judge and her training consisted of either just taking Judge Doe to Court to observe or sending her with clerk or by herself. Cunningham agreed to have Judge Doe start and then take 3 weeks off to finish her legal work after

Cunningham gave birth, but Judge Doe became sick and then the County had full time work – and Cunningham never apprised the County that Judge Doe was to have a black out period.  Judge Doe suffered financial loss and the employment contract was not honored.

8.  Soon after starting her job, the COVID pandemic started – being formally announced by the President on or about March 13, 2020, and sometime thereafter the Garden City Municipal Court shut down – but not for long. While it was shut, Judge Doe worked long hours at home for the County, dealing with COVID emergencies, many of which had no precedent.  The Court re-opened the end of March, with no zoom and no mask mandate.  Despite knowing about Judge Doe's untreated immune deficiency, Cunningham refused to put zoom in the Court, enforce a mask mandate, or keep it shut. Cunningham claimed that zoom would "cost millions of dollars," when she later took a job as the Prosecutor of the Municipal court at 200k a year, and simultaneously charging the city $180 an hour as the School District Attorney, and $170 an hour as its City Attorney.  Cost did not matter when it came to her own compensation, nor did safety – as she was able to work at home during her whole maternity-leave and get paid, as well as often during the pandemic, unlike Judge Doe, who ran court live, and walked in the same door as the police and sheriff.

9.  It was reasonably foreseeable that running a court during the pandemic, and particularly with an untreated immune deficient Judge at the helm, that Judge

Doe would contract COVID, become extremely ill, and have lasting injuries. Cunningham, as head Court Administrator and Assistant City Manager, owed Judge Doe a duty to keep her safe during the pandemic, failed this duty, and as a proximate cause of this failure, caused Judge Doe to be ill for many weeks and then develop long COVID, with injuries that include but are not limited to post-COVID diabetes, fatigue, and heart issues.

10. The City also failed to notify Judge Doe and its municipal employees of COVID clusters within the building – namely in the City police department and Sheriff's office one floor above, where Judge Doe routinely bought soda and snacks – and where Judge Doe found out right before becoming ill all the snack sellers had become ill with COVID.

11. Despite Judge Doe's request for accommodations, Judge Doe was repeatedly shut down and there was no interactive process for accommodation whatsoever with management, even though a raging pandemic was in full force, particularly in Garden City around the meat plants, and people were dying.

12. In October 2020, right before she got COVID, Judge Doe provided a note from a local doctor who did not understand her condition well and it was short term. The only response was to this letter, which was not to change the start dates at court for two days but to instead have Judge Doe miss those times with her fill on for one month.  As this was an ineffective accommodation and caused Judge Doe to lose out on bench time, Judge Doe told management she would

provide an updated letter from her Kansas City immunologist as soon as she could get an appointment with him – as he was filled during the pandemic.

13.  Judge Doe was finally able to meet with her immunologist in Kansas City via telehealth in December 2020, as there were no immunologists whatsoever in Garden City, Kansas, and the closest ones were hours away.  He constructed a letter for Judge Doe, stating her need for a schedule adjustment in court on two days that she started at 8:30 a.m., as these two days were causing her great fatigue and causing her disabilities to worsen.

14. After turning in this letter on or about December 12, 2020 to management, Judge Doe was met with complete silence and no accommodations were ever issued.    There  was  no  interactive  process  whatsoever,  and  no accommodations - either schedule accommodations or any alternatives – offered to Judge Doe.  Management has duty to have a rigorous interactive process  with  a  disabled  employee,  which  they  repeatedly  failed,  both throughout Doe's employment and especially after her doctor's letter, and such a duty is specified under the ADA/Rehab Act.  They also have a duty to offer alternative accommodations, as well as to not discriminate in any way – such as in pay or differing treatment in city policies.

15. Judge Doe received 94000 in pay for two jobs that were split by the County and the City – each paying 47000.  Her prosecutor, David West, was paid 200,000 and the prosecutor job moved to a "contractor" position so he, below a male below the age of 38 and non-disabled, could be paid more.  The job of

judge is now a contractor position and paid at 111k, and not combined with the County Counselor position, which is soon to be advertised as a full-time job. Judge Doe was also offered this rate before looking for housing, as the city well knew the housing was in short supply and more expensive than Kansas City. Judge Doe was fraudulently induced into employment at an artificially low rate of pay by Cunningham, et. al. Because of this low rate, Judge Doe suffered a loss of quality of life and was forced to live in low rent Section VIII apartments (though she paid full rate), to afford housing in Garden City and Kansas City. She also received less pay towards retirement and suffered other significant losses.

16. While working as Judge, Judge Doe received praise for her performance, and was never criticized or warned about any performance or character issues, save one issue about being tardy twice to court – the last time in July 2020. Judge Doe was sick and explained her growing need for schedule help. Judge Doe also noted that her Prosecutor had twice been late and the bailiff substitute once an hour late, holding up court – but there was no criticism for these individuals – those showing different treatment.

17. Judge Doe was closely evaluated in court by Cunningham and Medina, and then at the end of her employment by her supervisor, Matt Allen. This was the only time she ever saw Matt Allen other than in passing at the County before her termination. He had no criticism of her performance.

18. Judge Doe repeatedly called about the answering of her December 12, 2020 letter and was told management had not decided about "what to do." Under the ADA/Rehab Act, the EEOC Guidelines from 2018 recommend that management respond to a request for accommodations within seven working days. Management at Garden City Kansas not only violated the Guidelines, but never responded to Judge Doe regarding her doctor's letter.

19. Jennifer Cunningham had a lower-level employee, Ellie Voeppel, call Judge Doe the night before court on or about January 12, 2021, to ask "if she would be in court" the next day. Judge Doe replied she would but being ill did not always allow 24 hours advance notice and did not appreciate the harassment. When judge Doe returned from having COVID Medina and Cunningham told Judge Doe that she had to call in 24 hours in advance for being ill, despite failing to grant her accommodations, even though she had a substitute on call. No other employee who either had COVID or not were told such a directive, and Judge Doe was treated differently from everyone else.

20. Instead, Medina, as ordered by Cunningham, put Judge Doe on administrative leave on or about January 13, 2021, calling her as she was leaving for Court early in the morning and telling her to stay home "until further notice." No other information was given to Judge Doe, and she was told to stay away from Garden City, Kansas offices. Judge Doe continued to work at home for the County.

21. Judge Doe was despondent and severely anxious and depressed, and left on administrative leave until February 4, 2021 without explanation until she hired an attorney.

22. Her then-attorney was able to talk to management and finally get a memo at the very end of January 2021, which had no criticisms of Judge Doe's performance, but had multiple pretextual allegations – many of which were not true or which had happened many months before – such as being tardy – something that had not happened since July 2020, and only twice, just like the Prosecutor and Bailiff. One pretext criticized Judge Doe for asking for a phone chord and questioning a $3 charge on her electric bill (she was a utility consumer of the city). All allegations and without merit. She was also accused of not working one day when she did not have Court but had in fact worked for the County. She was said not to be at her desk at 8 am  - but Judge Doe had asked for accommodations and was often in a different building or location when working for the County. Judge Doe was not in court that day but worked that day for the County – as she was hired to do both jobs.

23. It is the Policy Garden City to count one day of work even if a person only worked one hour and was sick or unable to work the rest of the day. However, Judge Doe was treated differently and not asked if she worked the day in question. Further, it is the policy of Garden City to warn any employees of conduct or performance issues, then put them on probation – then terminate after multiple attempts to counsel. Judge Doe was never counseled  - just fired

for asking for accommodations, following up, and retaliated against when told it was taking too long to respond to my request.

24. After being left in dark for almost three weeks and driven to a state of despondency over my job and judicial status, Judge Doe was finally called in on February 4th and met with Allen, Medina, and Grissell. Cunningham was not present even though she had written the memo. Judge Doe was called in under the pretext of being allowed a chance to answer the allegations in the memo. However, Judge Doe found out after the meeting that Cunningham and Allen had obtained permission to fire me from City Council on a closed meeting on February 2, 2021, and that this alleged "chance to answer" was merely a ruse. Further, as Judge Doe was waiting to meet, Judge Doe saw HR handing out papers around the office which appeared to be papers they were already processing for my termination. Judge Doe answered every allegation, and all of this was on tape. Grisell did not even take notes but glared at Judge Doe the whole time, as he faced away from the camera. This meeting was taped – and there are tapes to validate Judge Doe's answers, as well as an agenda with City Council which shows a private meeting on February 2, 2021 that was off camera (and as will be proved – the subject matter was about me).

25. Judge Doe filed a complaint with the EEOC in Kansas City alleging violation of the ADA, Equal Pay Act, and Retaliation on August 21, 2021. Judge Doe did not receive a right to sue letter until January 17, 2023.

**COUNT I**

**VIOLATION OF THE REHABILITATION ACT/AMERICANS WITH DISABILITIES ACT**

1. The above paragraphs are herein realleged and herein incorporated by this reference as fully set forth.

2. Section 501-504 of the Rehabilitation Act and the corresponding sections of the ADA, which is modeled after the Rehab. Act, requires employers, especially employers such as defendants, to provide timely, reasonable, and effective accommodations to qualified persons therein defined, including Judge Doe.

3. The 2018 EEOC Guidelines specifically state that there must be an on-going-interactive process between the employer and employee about the precise nature of the problem that is generating the request, how a disability is prompting a need for an accommodation, and alternative accommodations that may be effective in meeting an individual's needs. Upon notification of the request, the DPM will contact the applicant or employee as soon as practicable, <u>preferably within seven business days</u> after the request is made, <u>to begin discussing the accommodation</u> request (emphasis added).

4. Sections 501-504 also requires that employers take the needs of the individual into account, and work with such employees in an open and supportive environment with the employee in determining the best accommodation for that employee.

15

5.  The Rehabilitation Act/ADA forbids an employer from disciplining a disabled employee until that employee has been given a chance to do their job by first being provided reasonable and effective accommodation.

6.  The Rehabilitation Act/ADA forbids an employer from harassing, treating differently – including being paid, denied a raise promotion, or continued employment, and subjecting an employee to a hostile environment because that employee is disabled or regarded as disabled.

7.  The Rehabilitation Act/ADA forbids an employer from attempting to isolate an employee because that employee is disabled and forbids an employer from disclosing confidential medical information about an employee's disability.

8.  Garden City's own internal memorandum and policy state that it forbids discrimination based on disability and works to promote and enhance diversity.

9.  The defendant Garden City, by and through Cunningham, Allen, Grisell, Medina, and in conjunction and conspiracy with the Garden City Council, failed to provide timely, reasonable, and effective accommodations to Judge Doe in violation of the Rehabilitation Act/ADA.

10. The defendants never responded to Judge Doe's oral requests for accommodation except for to refuse to consider them, and never responded to Judge Doe's December 12, 2020 immunologist's letter in any fashion whatsoever, in violation of the Rehabilitation Act/ADA.

11. The defendants and each of them failed to take Judge Doe's needs into account when providing accommodations that would be effective for her, and continually and intentionally failed to collaborate with Judge Doe in an open and supportive environment where Judge Doe's needs for accommodations could be effectively met, thus violating the Rehabilitation Act/ADA.

12. Defendant Cunningham and Medina (with the approval of Allen and Grisell) harassed Judge Doe by attempting to make her call 24 hours in advance of being ill even though she had a fill in and this was not required of any other employee, and each of the Defendants treated her differently than other non-disabled employees, in violation of the Rehabilitation Act/ADA. She continued this harassment by having her called the night before Court and then putting her on administrative leave for pretextual reasons.

13. Each of the Defendants failed to allow Judge Doe the ability to do her job with the provisions of reasonable and effective accommodations before terminating her in violation of the Rehabilitation Act.

14. Defendants met behind closed doors and conspired to delay providing Judge Doe any accommodations; conspired to issue one accommodation in October that was not effective, and otherwise ignored all other requests; refused to meet or speak with Judge Doe despite her many pleas and calls (and construed one call to mean she was not at work when she was working for the county); and conspired to circumvent the Rehabilitation Act/ADA and ultimately terminated Judge Doe by first placing her on administrative leave without warning and without issuing her any notice of problems – in order to give themselves time to try to put together a weak memo justifying any sort of reason to discipline her and for which to go to City Council – and retaliated against her based on her insistence on reasonable and effective accommodations and a safe courtroom from COVID in violation of the Rehabilitation Act/ADA and other counts as listed below.  The problems used to justify any termination were pretextual and used as avoidance of issuing any accommodations and finding a non-disabled judge.

15. The Defendants and each of them had no legitimate reason to fail to provide such reasonable and effective accommodations, except for their bias against disabled persons and an aversion to any inconvenience cause by changing court times (the Rehabilitation Act cannot be denied solely on inconvenience to other employees) – and

their bias against Judge Doe in particular – for asking for help with insurance, having an invisible disability, and then being sick for long with COVID – something she could not help and which could have been prevented by the Defendants themselves.

16. The actions of the Defendants, in failing to provide such timely, reasonable and effective accommodations, as well as treating Judge Doe differently and divulging confidential information to the City Council, were done with full knowledge of Judge Doe's disability; full knowledge that Judge Doe was a qualified individual with a disability as defined by Section 504, ad full knowledge that their failure to provide reasonable and effective accommodations would have Judge Doe.

17. The defendants' conduct did harm Judge Doe, and as a direct and proximate cause result of such conduct, the Plaintiff – Judge Doe, has suffered, and continues to suffer, damages and losses including loss of income, inability to secure meaningful employment and the complete loss of her judicial career, loss of health insurance which interrupted her very necessary IVIG and other care for long COVID – thus worsening her medical conditions even further, severe medical damages including long COVID, post-COVID diabetes, heart and lung problems, severe and worsening fatigue, and other medical issues, loss of economic opportunity, severe emotional and physical distress, irreparable

damage to reputation and profession, and other losses, all in excess of $100,000.

**COUNT II:**

**VIOLATION OF THE EQUAL PAY ACT/TITLE VII DISCRIMINATION EQUALITY OF PAY/ADEA EQUALITY OF PAY**

18.  All the paragraphs above are herein realleged and herein incorporated by this reference as though fully set forth.

19.  Judge Doe was a disabled female over the age of fifty when she accepted the job as Municipal Judge for the City of Garden City.

20.  The Equal Pay Act protects equal salary discrimination between the sexes performing relatively equal work.

21.  The Prosecutor at Garden City was a non-disabled, under forty male earning 200k a year. He did not have a second job which paid half his salary to the city.

22.  Mr. West was given this job as a Contractor when all other Prosecutors were full time employees of the city.

23.  Judge Doe was told she had to be both County Counselor and Municipal Judge to even qualify for a full-time position, and that she could not be a contractor.

24.  Therefore, at the time of employment, Judge Doe was not paid equally due to her status of being female.

25. Further, since her unlawful termination, the position of Judge has been offered to a non-disabled person on a contract basis, not combined with another job to justify her higher salary. This was denied to Judge Doe.

26. Title VII also prohibits disparate pay based on disability and age.

27. Therefore, while she was employed, Judge Doe was denied equal pay under the Equal Pay Act (for her gender) and for Title VII for her age.

28. She continues to be excluded based on her disability, as she was terminated due to her need for accommodations and Garden City's desire to find a non-disabled judge, which they did, and to whom they pay a much more generous salary as a contract employee (Judge Doe was not allowed to contract – and Garden City only paid 47000 of Judge Doe's salary v. 111,000 of the new Judge.)

29. Judge Doe was also not paid her traveling expenses to interview and work as was City Council who are not disabled.

30. Due to this equal pay gap, Judge Doe suffered a significant loss of income while before being employed, while being employed, and continues to suffer loss of income under the Rehab Act.

**COUNT III:**

**RETALIATION**

31. All the paragraphs above are herein realleged and herein incorporated by this reference as though fully set forth.

32. Judge Doe engaged in statutorily protected activity by requesting in reasonable, effective, and timely accommodations.

33. Judge Doe engaged in statutorily protected activity in opposing defendants' – especially defendant Cunningham – unlawful employment practices, including failure to provide reasonable and effective and timely accommodations, as well as for continuing disparate treatment and hostility, and failure to adequately protect personnel in court. Judge Doe opposed these practices by alerting defendants that these practices must stop, that she had asked for accommodations and should not have increased requirements to predict her illness and could not and would not do it, and then was thrown on administrative leave while the city scrambled to find minimal pretexts to mask their discrimination to justify terminating her.

34. The defendants, and each of them, had full knowledge of Judge Doe's disability and continual requests for accommodations, as well as her continued aggravating struggles with and after COVID.

35. The defendants, and each of them, subsequently took an adverse employment action, created a hostile work environment, and caused Judge Doe to be involuntarily placed on administrative leave and then terminated without proper due process because Judge Doe engaged in

lawful remedies to seek accommodation due to her declining health condition under the Rehabilitation Act/ADA.

36. Such conduct by the defendants constitutes unlawful retaliatory conduct Judge Doe for pursuit of her statutorily protected right to pursue her request for reasonable and effective accommodations.

37. The defendants' conduct did harm Judge Doe, and as a direct and proximate result of such conduct, the Plaintiff Judge Doe has suffered, and continues to suffer, damages and losses including loss of income, inability to secure meaningful employment, loss of her health insurance and an interruption in her IVIG and other very necessary care due to her immune deficiency and worsening long COVID, loss of economic opportunity, loss of judicial career, severe emotional and physical distress, irreparable damage to reputation and profession, and other losses, all in excess of $100,000.

**COUNT IV:**

**CONSPIRACY TO VIOLATE CIVIL RIGHTS**

38.  All the paragraphs above are herein realleged and herein incorporated by this reference as though fully set forth.

39. Defendants Cunningham, Allen, Grisell, Medina, and the Garden City Council hold or held office of trust within the Garden City Municipal Government at the highest levels.

40. All the Defendants are charged with upholding and enforcing the civil rights laws with the jurisdiction conferred by the United States Congress under the Rehabilitation Statute and the other statutes cited above, and the civil rights laws of the state of Kansas.

41. Judge Doe was an employee of the Municipal government of Garden City, Kansas when she was hired on February 3, 2020.

42. Through the hereinabove recited events, defendants Cunningham, Allen, Grisell, Medina, along with Garden City Council, while acting under color of state law, did consult, confer, plan, scheme, and otherwise cooperate in failing to provide a reasonable and effective accommodation to Judge Doe; and in thereafter creating a hostile work environment and forcing Judge Doe onto administrative leave and then termination; each of which separately and all of which together violated Judge Doe's civil rights, and impeded her ability to carry out her dual duties as Municipal Judge and County Counselor, as well as injured her in person and property while in the discharge of her duties as Judge and Attorney and thereafter she was put on administrative leave and terminated, in violation of 42 U.S.C. 1983.

43. All the above-named defendants, each acting for their own improper discriminatory motives, acted under the color of state law, conspired for the purpose of depriving Judge Doe of reasonable and effective accommodation in her employment and thereby depriving Judge Doe

of the Equal Protection of the laws of the United States and of equal

privileges under the laws of the State of Kansas in violation of 42 U.S.C.

Section 1983.

44. All the above-named defendants, while acting under color of state law,

each acting for their own improper discriminatory motives, conspired

to prevent, by force, intimidation, or threat, Judge Doe from holding

her office as Judge, trust , or place of confidence in the municipality of

Garden City, Kansas, and from discharging her duties thereof, in

violation of Section 1983.

45. All the above-named defendants, each acting under color of state law

and for their own improper discriminatory motives, acted in

furtherance of the object of such conspiracy, whereby Judge Doe was

an exercising her right to reasonable and effective accommodation and

to her employment free from discrimination in violation of 42 U.S.C.

1983.

46. The actions of all above-named defendants, acting under color of state

law, acted in bad faith and in reckless disregard of Judge Doe's rights

under well-established state and federal law which they were

employed to enforce.

47. Because of defendants' actions, Judge Doe was denied reasonable and

effective accommodation, suffered severe emotional distress and

damage to her physical health, has lost income, has diminished earning

capacity, has suffered irreparable harm to her reputation and career, has lost her judicial career on the bench, and will continue to endure such injuries.

**COUNTS V et al – STATE TORT CLAIMS**

The defendants have been duly served under the Kansas State tort claims and have the statutory timeframe of 120 days to answer Judge Doe from on or about February 2, 2023.

WHEREFORE, Judge Doe as Plaintiff prays for judgment in her favor and against the defendant of Garden City, Kansas, and further prays for this Court's order granting the following relief:

A.  Judgment against the defendants awarding Judge Doe compensator damages for injury to reputation, severe emotional and physical distress, lost income with prejudgment interest, diminished earning capacity, permanent physical impairment, medical bills and damages, and other compensatory damages as this Court sees fit:

B.  Judgment against Defendants awarding Judge Doe punitive damages for their violation of 42 U.S.C. Section 1983; and

C.  Judgment against defendants awarding Judge Does costs and attorney fee incurred herein.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(B) of the Federal Rules of Civil Procedure, Judge Doe respectfully

requests a jury trial in this action of all issues so triable.

Respectfully submitted:

Judge Doe, Pro Se

(Kristin E. Kandt)

11001 N. Cosby Ave
Kansas City, MO
64154

816-813-8167