## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **KRISTIN E. KANDT,** | |
| **Plaintiff,** | **Case No. 23-2043-DDC-TJJ** |
| **v.** | |
| **GARDEN CITY, KANSAS, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Kristin E. Kandt alleges that her former employer, Garden City, Kansas,

discriminated against her based on her disability.  Plaintiff brings claims for:  (1) discriminating

against her based on her disability, violating the ADA/ADAAA;[1] (2) retaliating against her for

opposing disability discrimination, violating the ADA; and (3) violating her constitutional right

to equal protection.  Defendants Garden City, Kansas, Jennifer Cunningham, Randall Grisell,

and Matt Allen all have filed a Motion to Dismiss (Doc. 11).  It asks the court to dismiss

plaintiff's equal protection claim.  Defendants Cunningham, Grisell, and Allen argue they're

entitled to qualified immunity because plaintiff has failed to plead a violation of a clearly

established constitutional right.  And Garden City argues plaintiff fails to state a claim against it

---

[1]     The ADA Amendments Act of 2008 ("ADAAA") amended the ADA and "went into effect on January 1, 2009."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303–04 n.1 (10th Cir. 2017) (citation omitted).  Here, the "events that form the basis for [plaintiff's] disability-related claims occurred after this date; therefore, the ADAAA is technically applicable here."  *Id.*  So, the court "refer[s] to [plaintiff's] disability-related claims . . . as claims alleging violations of the ADAAA."  *Id.*  Also, as our Circuit has noted, the 2008 amendments "primarily" revised "the ADA's definition of 'disability.'"  *Id.*  But here, these "revisions are not material to the disability issues that" plaintiff's claims present.  *Id.*  So, the court "freely rel[ies] on authorities prior to ADAAA's effective date that apply and construe the ADA, insofar as they are relevant."  *Id.*

because plaintiff has failed to allege that any of its employees violated her constitutional rights. As explained below, the court grants defendants' motion.

## I.        Background

The following facts come from plaintiff's First Amended Complaint (Doc. 5). The court accepts the facts as true and views them in the light most favorable to plaintiff, as the party opposing the Motion to Dismiss. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

Plaintiff suffers from primary immune deficiency. Doc. 5 at 5 (1st Am. Compl. ¶ 16). Plaintiff's condition requires her to undergo monthly infusions (IVIG) to stay healthy. *Id.* (1st Am. Compl. ¶ 17). Without these treatments for her disability, plaintiff becomes very fatigued and besieged by secondary infections. *Id.* Plaintiff also was at extremely high risk for death when COVID-19 emerged. *Id.*

Plaintiff began working as a municipal judge for defendant Garden City, Kansas in February 2020. *Id.* at 6 (1st Am. Compl. ¶¶ 19, 25). The health insurance for Garden City employees didn't cover plaintiff's IVIG treatments. *Id.* (1st Am. Compl. ¶ 26). Without access to IVIG, plaintiff became weak and sick. *Id.* (1st Am. Compl. ¶ 27). So, plaintiff requested a disability accommodation from defendant Cunningham, the Assistant City Manager. *Id.* at 2–3, 6–7 (1st Am. Compl. ¶¶ 3, 28).

As accommodation, plaintiff requested that municipal court start two hours later. *Id.* at 6–7 (1st Am. Compl. ¶ 28). Plaintiff requested this accommodation because her lack of treatment caused nonrestorative sleep, fatigue, chronic colds, and chronic infections. *Id.* Defendants refused to consider plaintiff's request. *Id.* at 7 (1st Am. Compl. ¶ 29). Defendant

Cunningham emailed plaintiff twice denying the accommodation and refusing to consider plaintiff's request. *Id.* Defendant Cunningham also informed plaintiff that she never would change the court's schedule to accommodate plaintiff. *Id.*

In March 2020, the Garden City Municipal Court shut down due to the COVID-19 pandemic. *Id.* (1st Am. Compl. ¶ 31). The City reopened the court at the end of May, without virtual appearances and without a mask mandate. *Id.* (1st Am. Compl. ¶ 32). Defendants knew that plaintiff had an untreated immune deficiency. *Id.* (1st Am. Compl. ¶ 33). Plaintiff requested accommodations repeatedly, but defendants refused to use virtual appearances for municipal court, enforce a mask mandate, or keep the municipal court closed. *Id.* As a result, plaintiff contracted COVID-19, became ill, and now has lasting medical issues. *Id.* (1st Am. Compl. ¶ 34). Defendants also failed to notify plaintiff of COVID-19 clusters within the building. *Id.* at 8 (1st Am. Compl. ¶ 35).

In October 2020, plaintiff provided a note from a local doctor to defendants, hoping it would get them to discuss possible disability accommodations. *Id.* (1st Am. Compl. ¶ 37). In response, the City's Human Resources Director told plaintiff that defendant Cunningham and defendant Allen, the City Manager, had decided that plaintiff should be absent from court two days per week and replaced by an alternate judge. *Id.* (1st Am. Compl. ¶ 38).

In January 2021, without warning, defendant Cunningham ordered the City's Human Resources Director to put plaintiff on administrative leave. *Id.* at 10 (1st Am. Compl. ¶ 49). Defendants didn't provide plaintiff with any information about this suspension. *Id.* (1st Am. Compl. ¶ 50). Plaintiff remained on suspension for approximately two weeks, then she met with defendant Allen and defendant Grisell, the City Attorney. *Id.* at 11 (1st Am. Compl. ¶¶ 55–57). Plaintiff was fired. *Id.*

3

Plaintiff alleges that defendants, during her employment, held her to different standards than non-disabled employees. For example, in July 2020, defendant Cunningham chastised plaintiff for showing up late to court on two occasions. *Id.* at 9 (1st Am. Compl. ¶ 45). Each time, plaintiff was sick and had explained her need for help with scheduling to defendants. *Id.* Other non-disabled court employees were late to work, but defendants didn't chastise them for their tardiness. *Id.* at 9–10 (1st Am. Compl. ¶ 46). Defendants also required plaintiff to provide 24-hour notice in advance when she was ill. *Id.* at 10 (1st Am. Compl. ¶ 48). Defendants didn't subject any other employees to this policy. *Id.* Defendants had a policy that counted one day of work even if an employee worked for just one hour and couldn't work the rest of the day, but defendants didn't apply this policy to plaintiff. *Id.* at 10–11 (1st Am. Compl. ¶ 53). And defendants had a policy to warn employees of conduct or performance issues before putting them on probation. *Id.* at 11 (1st Am. Compl. ¶ 54). Defendants' policy also provided employment counseling to employees before terminating their employment. *Id.* But defendants didn't warn plaintiff of any conduct or performance issues before putting her on probation, nor did they provide her with employment counseling before terminating her employment. *Id.*

Having recited the relevant background, the court addresses defendants' Motion to Dismiss (Doc. 11), next, starting with the relevant legal standard.

## II.      Legal Standard

For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court must assume that the factual

allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion

couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  And while this

pleading standard doesn't require "'detailed factual allegations,'" it demands more than a

"pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action[,]'" which, as the Supreme Court explained, "'will not do.'"  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).

### III.       Analysis

Defendants move to dismiss just one of plaintiff's claims:  her equal protection claim.

The individual defendants, Cunningham, Grisell, and Allen, assert that they're entitled to

qualified immunity against the equal protection claim.  Defendant Garden City asserts that

plaintiff fails to state an equal protection claim.  The court evaluates defendants' arguments,

below, starting with the individual defendants.

### A.       Individual Defendants

Defendants Cunningham, Grisell, and Allen ask the court to dismiss the sole claim

asserted against them—Count III.  In Count III, plaintiff asserts that all defendants violated her

right to equal protection.  Doc. 5 at 16–17 (1st Am. Compl. ¶¶ 86–97).  Defendants Cunningham,

Grisell, and Allen assert that they're entitled to qualified immunity against this constitutional

claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To establish a claim

under 42 U.S.C. § 1983 against an individual defendant who asserts the defense of qualified

immunity, plaintiff must (1) come forward with facts that "make out a violation of a constitutional right[,]" and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A court has discretion to determine "which of the two prongs of the qualified immunity analysis" to "address[] first in light of the circumstances in the particular case at hand." *Id.* at 236. The court acknowledges that our Circuit has suggested that addressing the "clearly established" question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 239). But defendant Garden City argues plaintiff fails to state a claim because no individual defendant violated her constitutional rights, so the court elects to addresses both prongs of the analysis. It begins with the first prong: whether plaintiff has pled facts that "make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232.

**1.        Plaintiff has failed to plead a constitutional violation.**

Plaintiff brings a § 1983 claim against all defendants for violating her rights to equal protection under the Fourteenth Amendment. "The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1). The clause is "essentially a direction that all persons similarly situated should be treated alike, and is intended to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents[.]" *Id.* (citations and internal quotation marks omitted).

An equal protection claim may be asserted, for a group of persons or even a "class of one." *Id.* (citation and internal quotation marks omitted).  Typically, a plaintiff must establish an equal protection violation by showing that a governmental decision-maker intentionally discriminated against someone because that person is part of a particular *class* of people. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012).  But under the "class of one" doctrine, a plaintiff can establish an equal protection violation by showing that a government actor discriminated against a *specific* individual.  *Id.* at 688.  "The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (citation, brackets, and internal quotation marks omitted).  The parties dispute whether plaintiff brings a "class of one" claim.

Defendants assert that plaintiff brings a "class of one" claim.  Doc. 12 at 6–7.  If defendants are right, then plaintiff's equal protection claim fails because the Supreme Court has held that a plaintiff can't pursue a class of one claim in the public employment context.  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008).  To avoid the *Engquist* buzzsaw, plaintiff argues that she's "not advancing a claim that Defendants took action against her based on characteristics unique to her."  Doc. 15 at 4.  Instead, plaintiff "alleges that Defendants engaged in discrimination based on her immune deficiency."  *Id.*  So, according to plaintiff, she brings "classic equal protection claims based on her membership in an identifiable group."  *Id.*  Put differently, plaintiff's First Amended Complaint alleges that defendants "would have taken the same action against other employees who shared [plaintiff's] characteristics."  *Id.* at 6.  Defendants reply that plaintiff's reframing of her case doesn't save her claim.

7

Defendants argue that plaintiff's equal protection claim fails because disability doesn't qualify as a suspect or protected class for purposes of equal protection.  Doc. 20 at 1.  Indeed, the Supreme Court applies rational basis review to state action that differentiates between disabled and nondisabled people.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001).  That is why, defendants argue, plaintiff brings a class of one claim—no matter how plaintiff phrases her claim.  Indeed, other courts have held that equal protection claims based on disability are "essentially a 'class of one' equal protection claim."  *Schneider v. Corvallis Sch. Dis. 509J*, No. CIV 05-6375, 2006 WL 3827457, at *2 (D. Or. Dec. 27, 2006); *see also Kaiser v. Highland Cent. Sch. Dist.*, No. 1:08-CV-0436, 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008) ("Disability and/or perceived disability are not suspect or quasi-suspect classifications. . . .  Therefore, a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination is asserting a 'class of one' Equal Protection claim, to which the courts apply rational basis analysis." (citing *Price v. City of N.Y.*, 264 F. App'x 66, 68 (2d Cir. 2008)); *Shaud v. Sugarloaf Twp. Supervisors*, No. 3:07cv1212, 2008 WL 313849, at *5 (M.D. Pa. Feb. 4, 2008) ("Plaintiff appears to allege . . . that the reason motivating the police's unwillingness to enforce the laws when he complained was animus toward him because of his disability . . . .  In effect, plaintiff is raising a 'class of one' equal protection claim."); *Yates ex rel. Est. of Yates v. Beck*, No. 1:03CV10, 2003 WL 22231260, at *6 (W.D.N.C. Aug. 22, 2003) ("Because persons with disabilities are not considered members of a protected class under the Equal Protection Clause, Plaintiff's claim is, as she acknowledges, essentially a 'class of one' equal protection claim.").

Plaintiff's equal protection claim thus presents a class of one claim barred by *Engquist*.[2]

*See Ramierz v. Town of Oxford*, No. 3:21-cv-240, 2022 WL 3646203, at *7–9 (D. Conn. Aug. 24, 2022) (dismissing equal protection claim asserted against public employer on basis of disability as barred by *Engquist*); *Jeannot v. Phila. Hous. Auth.*, 356 F. Supp. 3d 440, 451–52 (E.D. Pa. 2018) (dismissing equal protection claim asserted against public employer on basis of disability, explaining "where a plaintiff cannot prove that he is a member of a protected class or that the government has interfered with a fundamental right, he may bring his claim under a 'class-of-one' theory[,]" and citing *Engquist*, 553 U.S. at 595); *Kaiser*, 2008 WL 5157450, at *2 (dismissing equal protection claim asserted against public employer on basis of disability as barred by *Engquist*).  As a result, plaintiff has failed the first qualified immunity prong—to plead a constitutional violation—and defendants Cunningham, Grisell, and Allen are entitled to qualified immunity.

Plaintiff's equal protection claim also fails for a second, independent reason:  plaintiff hasn't shouldered her burden at the second prong of the qualified immunity analysis.  The court considers qualified immunity's second prong, next.

---

[2]     As defendants correctly point out, the cases plaintiff relies on are inapposite.  She first cites *Warrington v. Board of County Commissioners of Mineral County*, where the court denied a motion to dismiss an equal protection claim against a public employer based on disability.  No. 12-cv-01193, 2013 WL 93192, at *2–3 (D. Colo. Jan. 8, 2013).  But those defendants didn't argue for dismissal based on *Engquist*.  *Id.*  Instead, they argued plaintiff had failed to plead similarly situated individuals sufficiently. *Id.*  And the *Warrington* plaintiff's equal protection claim eventually ran into the *Engquist* buzzsaw at summary judgment.  *Warrington v. Bd. of Cnty. Comm'rs of Min. Cnty.*, 4 F. Supp. 3d 1243, 1247 (D. Colo. 2013).  Likewise, plaintiff's other case, *Robert v. Board of County Commissioners of Brown County, Kansas*, doesn't address *Engquist*.  No. 08-2150, 2011 WL 836729, at *11–12 (D. Kan. Mar. 3, 2011).

### 2.    Plaintiff has failed to shoulder her burden to show a clearly established right.

Plaintiff has failed to show that defendants Cunningham, Grisell, and Allen violated a clearly established constitutional right.  A right is clearly established when "'there [is] a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . found the law to be as the plaintiff maintains.'"  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)).  But the "plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it."  *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000) (citation and internal quotation marks omitted).  Instead, the court must determine "'whether the violative nature of *particular* conduct is clearly established.'"  *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Conversely, to hold a defendant liable under § 1983, it is not necessary that "'the very action in question has previously been held unlawful.'"  *Id.* at 1866–67 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Thus, for qualified immunity to apply, the Supreme Court does not require a "reported case directly on point."  *Id.* at 1867 (citation and internal quotation marks omitted).  Instead, the Supreme Court's case law requires district courts to evaluate whether "the unlawfulness of the officer's conduct '[is] apparent'" "'in the light of pre-existing law.'"  *Id.* (quoting *Anderson*, 483 U.S. at 640).  This governing standard "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'"  *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  In short, the doctrine of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ziglar*, 582 U.S. at 152 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, defendants asserted qualified immunity, so the burden shifted to plaintiff to identify a Tenth Circuit case, Supreme Court case, or other persuasive authority defining plaintiff's clearly established rights. Plaintiff responded with *Ramirez v. Department of Corrections*, 222 F.3d 1238 (10th Cir. 2000). There, plaintiffs sued their employer for racial and national origin discrimination and for violating their free speech and equal protection rights. *Id.* at 1240. Our Circuit held, "the general notion that one cannot discriminate on the basis of race or national origin is undoubtedly clearly established." *Id.* at 1243–44 (internal quotation marks omitted). And, our Circuit also explained that the *Ramirez* plaintiffs' rights were clearly established because the "protection afforded by § 1983 includes relief from discriminatory employment practices of public employers." *Id.* at 1244 (citation and internal quotation marks omitted). Unfortunately for plaintiff, our Circuit already has held that *Ramirez* doesn't create a clearly established protection against employment discrimination on the basis of disability.

In *Ragsdell v. Regional Housing Alliance of La Plata County*, plaintiff worked for a governmental entity while disabled and he quit because, he alleged, his supervisor "had irrationally refused any accommodations for the disability." 603 F. App'x 653, 654 (10th Cir. 2015). The *Ragsdell* plaintiff brought an equal protection claim, and defendant—plaintiff's former supervisor—asserted qualified immunity. *Id.* Our Circuit noted that neither "the Supreme Court nor our court has ever applied the Fourteenth Amendment's Equal Protection Clause to unequal treatment based on a failure to accommodate an employee's disability. To the contrary, both courts have suggested that the Equal Protection Clause does not apply in these circumstances." *Id.* at 655 (first citing *Garrett*, 531 U.S. at 367–68; then citing *Welsh v. Tulsa*, 977 F.2d 1415, 1420 (10th Cir. 1992)). The *Ragsdell* plaintiff tried to meet his burden to show his right was clearly established by citing, among other cases, *Ramirez*. *Id.* at 655–56. The

Circuit held *Ramirez* did not create a clearly established right because it "simply held that the Constitution clearly prohibited discrimination based on race and national origin—not disability." *Id.* (citing *Ramirez*, 222 F.3d at 1243–44).

*Ragsdell*, though unpublished, persuades the court to conclude that plaintiff hasn't shouldered her qualified immunity burden to show a clearly established right by relying on *Ramirez*. *Ramirez* addressed only racial discrimination and national origin discrimination. 222 F.3d at 1243–44. *Ramirez* did not hold that "'the violative nature of *particular* conduct'"— disability discrimination— "'is clearly established.'" *Ziglar*, 582 U.S. at 151 (emphasis in original) (quoting *Mullenix*, 577 U.S. at 12). That is why *Ramirez* couldn't have provided notice to defendants Cunningham, Grisell, and Allen that they had a constitutional duty to accommodate plaintiff's disability.

The court thus dismisses plaintiff's equal protection claim against defendants Cunningham, Grisell, and Allen for a second, independent reason. Plaintiff has failed both prongs of the qualified immunity test. The court considers the consequences of this result for defendant Garden City, next.

### B.   Garden City

Defendant Garden City's dismissal request relies on the court's conclusion about the individual defendants. Garden City asserts that, because plaintiff hasn't asserted a viable equal protection claim against the individual defendants—Garden City's officers—then she also fails to state an equal protection claim against Garden City. Garden City is correct.

Plaintiff aspires to establish *Monell* municipal liability against Garden City. *See Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978). But a "municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Above, the court concluded that

plaintiff failed to state a viable equal protection claim against individual defendants and Garden City employees Cunningham, Grisell, or Allen.  *See above* § III.A.  Without an underlying constitutional violation by these individual defendants, plaintiff has no viable basis for an equal protection claim against Garden City.  The court thus grants Garden City's request to dismiss plaintiff's equal protection claim.

## IV.        Conclusion

The court grants defendants' Motion to Dismiss (Doc. 11) and dismisses plaintiff's Count III, her equal protection claim.  So, the individual defendants are dismissed from this action.  The court dismisses the equal protection claim against defendants Cunningham, Grisell, and Allen with prejudice because they are entitled to qualified immunity.  *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing district court to grant motion to dismiss based on qualified immunity "with prejudice"); *Vreeland v. Olson*, No. 20-cv-02330, 2021 WL 4237269, at *5 n.7 (D. Colo. Sept. 16, 2021) (dismissing claims against defendants entitled to qualified immunity with prejudice).

Because the court has granted defendants' Motion to Dismiss, it must address plaintiff's request that, if the court determines that plaintiff's allegations fall short, then it should grant her leave to amend.  Doc. 15 at 14.  The court denies this request.  A "request for leave to amend included in a brief in opposition to a motion to dismiss is improper; rather, leave to amend must be sought by a written motion."  *Davison Design & Dev., Inc. v. LeadVision Media, LLC*, No. CIV-14-118, 2014 WL 12844157, at *5 (W.D. Okla. July 30, 2014) (citing *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010)).  And, in any event, leave to amend would prove futile because the individual defendants are entitled to qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 11) is granted.

13

**IT IS SO ORDERED.**

**Dated this 25th day of March, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

14