IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRIT OF KANSAS

KRISTIN E. KANDT,

          Plaintiff,

v.

CITY OF GARDEN CITY, KANSAS,

          Defendant.

Case No. 23-2043-DDC-TJJ

## MEMORANDUM AND ORDER

    This is a case about disability discrimination. But the issue at hand is procedural. Plaintiff Kristin Kandt sues Garden City, Kansas over discriminatory treatment she allegedly experienced while serving as Garden City's Municipal Judge. Kandt contends that Garden City denied her repeated requests for accommodation and retaliated against her for pursuing them. After the city terminated Kandt's employment, she filed charges with the EEOC in August 2022. Around that time, the city began its search for her replacement, and Kandt reapplied. The city declined to interview her.

    So, Kandt filed a second charge with the EEOC—this time, over the city's failure to interview or hire her for the Municipal Judge role. But, the city contends, Kandt can't add claims based on that second charge now because she waited too long. The Department of Justice (DOJ) issued a right-to-sue notice on August 17, 2023. Kandt then had 90 days to file a claim. But Kandt didn't file her Second Amended Complaint (Doc. 35)—adding the new claim—until

July 2, 2024, almost ten months later. The reason for the delay, she maintains, is that she didn't receive the right-to-sue notice until June 2024.

The city moves to dismiss Kandt's new claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 36. It argues that Kandt's claim is time barred because she failed to sue within 90 days of the notice in the EEOC's August 17, 2023 right-to-sue letter. Doc. 37 at 1. Kandt responds that she didn't receive the DOJ's right-to-sue notice until June 2024, "through no fault of [her] own." Doc. 38 at 5. And she attached a string of emails to her Second Amended Complaint to demonstrate nonreceipt. *See* Doc. 35-2. So, Kandt maintains, the court should equitably toll the 90-day limitations period. Doc. 38 at 3.

The court determines it must presume receipt of the notice in August 2023. And it concludes Kandt hasn't shouldered her burden to establish that equitable tolling applies here. The court thus grants the city's Motion to Dismiss Plaintiff's Additional Claims in Second Amended Complaint (Doc. 36), as explained below.

## I.     Factual Background

These facts come from Kandt's initial Complaint (Doc. 1) and Second Amended Complaint (Doc. 35). The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [her], and draw[s] all reasonable inferences from the facts" in her favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). This Order recites just the facts required to decide the Partial Motion to Dismiss.

### *The Garden City Municipal Judge Position*

In February 2020, plaintiff Kristin Kandt accepted the role of Municipal Judge for the City of Garden City, Kansas. Doc. 35 at 3, 4 (Second Am. Compl. ¶¶ 13, 24). Before becoming

Municipal Judge, Kandt was an accomplished attorney with more than 25 years of legal experience. *Id*. at 3 (Second Am. Compl. ¶¶ 13–14).

### *Kandt's Disability and Accommodations*

Kandt is disabled. *Id*. (Second Am. Compl. ¶¶ 15–17). She has primary immune deficiency, a chronic condition that requires regular medical treatment and substantial precautions to mitigate health risks. *Id*. So, throughout her time as Municipal Judge, she required accommodations—both to receive care for her disability, and to avoid exacerbating it. *Id*. Kandt maintains that during her time as Municipal Judge, her colleagues at the city denied her repeated requests for accommodations because of her disability. *Id*. at 4, 5 (Second Am. Compl. ¶¶ 27–29, 35). As a result, her health and wellbeing diminished. *Id*. at 9 (Second Am. Compl. ¶ 63). In January 2021, the city put her on administrative leave and, in February 2022, terminated her employment. *Id*. at 7, 8 (Second Am. Compl. ¶¶ 48, 54–56).

### *Kandt's Initial EEOC Charges*

Kandt filed discrimination charges with the EEOC on August 21, 2022. *Id*. at 8 (Second Am. Compl. ¶ 57). The EEOC issued a "Determination and Notice of Rights"—commonly called a "right-to-sue" letter—on January 17, 2023. Doc. 1-1 at 1. The notice informed Kandt she'd have 90 days to file suit over her charges. *Id*. And on February 2, 2023, Kandt timely filed her Complaint.[1] Doc. 1 (Compl.). The Complaint contained five separate counts alleging that Garden City had violated federal and state law. *Id*. at 15–26 (Compl. ¶¶ 1–47). When Kandt filed her Complaint, she attached the EEOC right-to-sue notice and its corresponding

---

[1] Kandt filed her Complaint anonymously, under the pseudonym "Jane Doe." Doc. 1 at 1 (Compl.). She requested anonymity because of the private medical information at issue in the case. *Id.* at 1 n.1. The court later informed Kandt "that she would be required to file and prevail on a motion to proceed by pseudonym if she wished to do so. Doc. 23. Kandt then advised the court that she didn't intend to file such a motion. *Id.* The court thus directed the parties and clerk to name Kandt in all future filings. *Id.* The court thus uses her name here.

3

explanatory documents to her Complaint. Doc. 1-1. On March 25, 2024, this court dismissed one of her claims—an equal protection claim—without disposing of the others. Doc. 25 at 13.

### *Kandt's Second Amended Complaint*

Kandt filed a Second Amended Complaint on July 2, 2024. Doc. 35 (Second Am. Compl.). It included two counts under the Americans with Disabilities Act ("ADA") and ADA Amendments Act of 2008 ("ADAAA"), known collectively as the "ADA/ADAAA." *Id*. at 9–13 (Second Am. Compl. ¶¶ 65–90). Kandt asserts two claims: disability discrimination and retaliation. *Id.* While the first count reasserted allegations from her initial Complaint, the second count introduced on a new theory of recovery: that Garden City had retaliated against her by declining to interview or hire her for the Municipal Judge opening in August 2022. *Id*. at 12–13 (Second Am. Compl. ¶¶ 83–88). She claims the city retaliated against her for: complaining about instances of discrimination; requesting that the city reasonably accommodate her; and filing charges with the EEOC that resulted in her first right-to-sue notice. *Id*. at 12–13 (Second Am. Compl. ¶¶ 82–86).

She attached several documents to her Second Amended Complaint: (1) the January 2023 "Determination and Notice of Rights" from the EEOC and its corresponding informational packet, Doc. 35-1 at 1–5; (2) a second right-to-sue notice—this one issued by the DOJ and dated August 17, 2023—and its attendant information sheet, Doc. 35-2 at 3–6; (3) an EEOC notice dated August 16, 2023, informing her that the EEOC had forwarded her second charge to the DOJ, *id.* at 8; and (4) an email exchange consisting of three parts, *id*. at 1–2, 7. Next, the court describes the three email exchanges.

*Email #1:  The Right-to-Sue Notice*

In one email—dated August 17, 2023—DOJ Senior Investigator Celeste Adams-Simmons contacted Kandt at the address "keklaw@sbcglobal.net" to deliver the DOJ-issued right-to-sue notice.  Doc. 35-2 at 2.  Adams-Simmons apparently attached the notice.  *Id*.  In the body of the email, Adams-Simmons said Kandt would have 90 days from her "receipt of the Notice" to file suit.  *Id*.  The email requested that Kandt "reply 'received' as acknowledgement."  *Id*.  While addressed to Kandt, Adams-Simmons sent "CCs" to Stephanie Williams, an Enforcement Supervisor in the EEOC's Kansas City office, among others.  *Id*. at 1–2.  The court reprints the entire email here:

```
From:         Simmons, Celeste (CRT)
To:           keklaw@sbcglobal.net
Cc:           NATASCHA DEGUIRE; STEPHANIE WILLIAMS; ellie.voepel@gardencityks.us; human.resources@gardencityks.us
Subject:      ADA & EPA Notices of Right to Sue: Kandt v. Garden City Kansas
Date:         Thursday, August 17, 2023 8:40:42 AM
Attachments:  Kristin Kandt 563-2023-00229 ADARTS.pdf
              2023-08-17 563-2023-00229 Closure Notice for EPA.pdf
Importance:   High
```

Good morning, Ms. Kandt

   Attached is your ADA Notice of Right to Sue in the above referenced case filed with the EEOC, and your rights under the ADA Amendments Act.  Your 90-day period begins with your receipt of the Notice.  Please reply "received" as acknowledgement.  Thanks so much.

Celeste A. Adams-Simmons
Senior Investigator
Title I (Employment) Program Manager
U S Department of Justice
Disability Rights Section
202 353-5470
Celeste.simmons@usdoj.gov

*Id*. at 2.

*Email #2: The Forwarded Notice*

In the second email, dated June 3, 2024, Stephanie Williams contacted Kandt at the same "keklaw" email address used in the August 2023 email. *Id*. at 1. Williams forwarded to Kandt the August 2023 email and attachments from Celeste Adams-Simmons. *Id*. This email seemed to respond to an omitted request by Kandt for her right-to-sue notice. It began, "I believe this is the case that you indicated you needed the right to sue." *Id*. Again, the court reproduces the entire email, below.

> From: STEPHANIE WILLIAMS <STEPHANIE.WILLIAMS@eeoc.gov>
> Date: June 3, 2024 at 10:43:09 AM CDT
> To: kristin kandt <keklaw@sbcglobal.net>
> Subject: 563-2023-00229, Kandt vs. Garden City Kansas
>
> Judge Kandt,
>
> I believe this is the case that you indicated you needed the right to sue. The Department of Justice issued the right to sue on August 17, 2024, for the ADA and EEOC issued the right to sue for EPA the same date, which I have attached here for your convenience.
>
> Sincerely,
>
> Stephanie Williams (she, her, hers)
> Enforcement Supervisor
> Stephanie.Williams@eeoc.gov
> U.S. EEOC, Kansas City Area Office
> 400 State Ave, Suite 905
> Kansas City, KS 66101
> (913) 340-8832

*Id.*

*Email #3: Acknowledgment*

In a third email—this one dated June 13, 2024—Kandt contacted Stephanie Williams to say, "I acknowledged receipt on June 3, 2024 - and I just want to confirm that the DOJ sent you the letter and not me - and this was the first time you sent me a copy." *Id*. at 7. The June 3

acknowledgement referenced by this email isn't attached to the Second Amended Complaint. *See generally* Doc. 35 (Second Am. Compl.). The court includes this third email, below.

> From: kristin kandt
> To: STEPHANIE WILLIAMS; Tiffany Klosener; Sonya Wylie; kristin kandt
> Subject: DOJ letter dated Aug 23
> Date: Thursday, June 13, 2024 2:24:35 PM
>
> Stephanie - hello.
>
> I acknowledged receipt on June 3, 2024 - and I just want to confirm that the DOJ sent you the letter and not me - and this was the first time you sent me a copy.
>
> Thank you,
>
> Judge Kristin Kandt, Esq.

Doc. 35-2 at 7.

## II.     Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In general terms, a court relies on a complaint's contents to decide a motion to dismiss. But "courts may also consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic." *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Here, Kandt attached the relevant right-to-sue notices and above referenced emails to her Second Amended Complaint. *See* Doc. 35-1, 35-2. The court thus considers them along with the contents of the pleadings.

### III.     Limitations Period

Plaintiffs suing under the ADA/ADAAA are bound to the same limitations periods as plaintiffs suing under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17. 42 U.S.C. § 12117. To sue under Title VII, a plaintiff must "(1) file a timely charge of discrimination with the EEOC; (2) receive an EEOC right-to-sue letter; and (3) file suit within ninety days of the letter." *Brown v. Unified Sch. Dist. #501*, No. 2:22-CV-02519-HLT, 2023 WL 8274530, at *3 (D. Kan. Nov. 30, 2023), *aff'd sub nom. Brown v. Unified Sch. Dist. No. 501*, No. 23-3253, 2024 WL 3355277 (10th Cir. July 10, 2024), *cert. denied*, No. 24-5518, 2024 WL 5112316 (U.S. Dec. 16, 2024); *see also* 42 U.S.C. § 2000e-5(f)(1).

If the aggrieved party fails to sue within 90 days of receiving a right-to-sue notice, "the claims alleged in the EEOC charge are foreclosed[.]" *Tadlock v. Marshall Cnty. HMA, LLC*, 603 F. App'x 693, 700 (10th Cir. 2015). Yet, "Title VII is broad remedial legislation that must be liberally construed." *Jackson v. Cont'l Cargo-Denver*, 183 F.3d 1186, 1189 (10th Cir. 1999). "Compliance with the filing requirements of Title VII is not a jurisdictional prerequisite, rather it is a condition precedent to suit[.]" *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995). Filing deadlines, like statutes of limitation, are "subject to waiver, estoppel, and equitable tolling." *Id*. At every stage of a Title VII suit—starting when the plaintiff seeks a right-to-sue notice—the plaintiff must "'assume some minimum responsibility . . . for an orderly and expeditious resolution of his dispute.'" *Panicker v. Compass Group U.S.A. Inc.*, 712 F. App'x 784, 788 (10th Cir. 2017) (quoting *Million*, 47 F.3d at 388).

IV.   Analysis

The court now turns to the specific 90-day limitation questions at issue here. Namely, the court addresses whether Kandt's second right-to-sue letter qualifies for a presumption of receipt on August 17, 2023. It does, the court concludes. Presuming receipt makes Kandt's new failure-to-hire retaliation claim untimely. So, the court next considers whether Kandt has shouldered her burden to establish a basis for equitably tolling the 90-day limitation and rescuing her added claim. She hasn't. So, the court dismisses Kandt's failure-to-hire retaliation claim as time-barred.

The court explains these conclusions, below.

A.   **Presumption of Receipt**

When the EEOC emails a right-to-sue notice, receipt generally occurs when the email reaches the inbox of the party (or that of the party's counsel). *See Lax v. Mayorkas*, 20 F.4th

9

1178, 1182 (7th Cir. 2021) (holding 90-day window starts with receipt of email with right-to-sue notice attached—not when party first opens attachment or reads notice); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024) (deciding 90-day period began when EEOC informed plaintiff's counsel that right-to-sue notice was available on EEOC Public Portal, even though counsel couldn't login or read notice until EEOC re-sent it more than a month later); *Paniconi v. Abington Hosp.-Jefferson Health*, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022) (holding party received notice "when the email notification reached Plaintiff's attorney's inbox"); *but see Denoia v. Roche Diagnostics Corp.*, No. 23-CV-00344-SEB-TAB, 2024 WL 5186873, at *13 (S.D. Ind. Dec. 20, 2024) (resolving factual dispute in plaintiff's favor where summary judgment record contained no evidence plaintiff had received emailed notice but EEOC's Activity Log reported plaintiff had received it).

When the date a plaintiff received a right-to-sue notice is unknown or disputed, courts have presumed receipt. *Panicker*, 712 F. App'x at 786 (citing *Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001) (collecting cases)). The presumption arises when "a properly addressed piece of mail is placed in the care of the postal service." *Witt v. Roadway Exp.*, 136 F.3d 1424, 1429–30 (10th Cir. 1998). The Tenth Circuit has "implicitly sanctioned . . . either a five-day or a three-day presumption" of receipt for mailed notices. *Lozano*, 258 F.3d at 1164 (*citing Witt*, 136 F.3d at 1429–30).

Outside the Title VII context, other Circuits have applied traditional mail presumptions of receipt to properly addressed emails. *See Am. Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) (concluding where email is "generally reliable" and specific message "properly dispatched," "a presumption of delivery should apply to e-mails"); *see also Kass v. PayPal Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) (presuming under Illinois law that receipt

of email occurred where defendant used customary notification practices and record tended "to show that the email was probably sent to [the plaintiff]"); *but cf. Eddington v. United States Dep't of Def.*, 35 F.4th 833, 840 (D.C. Cir. 2022) ("Without evidence of the consistent functionality of the email application, there is no factual basis from which to derive a presumption of receipt."). Courts also have presumed receipt for faxes and telegrams. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009) (collecting cases).

Presumptions of receipt are rebuttable. *See Lozano*, 258 F.3d at 1166. Thus, a party may rebut any presumption of receipt by demonstrating when it actually received a right-to-sue notice in a couple of ways: courts "may rely upon affidavits stating personal knowledge of the receipt date," *id.* (citing *Witt*, 136 F.3d at 1429–30), or other admissible evidence, *id.* (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)). On their own, though, something like a date-of receipt notation (*i.e.*, a date stamp placed on a document) likely doesn't suffice because they may be "'self-serving[.]'" *Id.* (quoting *Sherlock*, 84 F.3d at 526). Such "'self-serving'" evidence thus "requires further corroboration . . . by an affidavit or other admissible evidence." *Id.* (quoting *Sherlock,* 84 F.3d at 526)

Here, the court presumes receipt, for three reasons.

*First*, the August 17, 2023 email qualifies as "a properly addressed piece of mail[.]" *Witt*, 136 F.3d at 1429–30. Kandt never alleges or even argues that the address used in the August 2023 email was improper. *See generally* Doc. 38. Indeed, as the city points out, Kandt received an email from the EEOC in 2024 that used the same email address—that's how she acquired the forwarded right-to-sue letter. Doc. 39 at 2 (citing Doc. 35-2 at 1); *compare* Doc. 35-2 at 1 (email from EEOC to Kandt at keklaw@sbcglobal.net on June 3, 2024) *with* Doc. 35-2 at 2 (email from DOJ to Kandt at keklaw@sbcglobal.net on August 17, 2023).

11

*Second*, the email string suggests the August 2023 email was "properly dispatched." *Am. Boat Co.*, 418 F.3d at 914. Another recipient of the August 2023 email—Stephanie Williams at EEOC—received it because she was able to forward the 2023 email to Kandt in June 2024. Doc. 35-2 at 1. When the record demonstrates both a proper email address and successful receipt by another addressee, it tends "to show that the email was probably sent to [the plaintiff.]" *Kass*, 75 F.4th at 704.

*Third*, the material Kandt provides trying to rebut the presumption of receipt aligns more closely with "self-serving" style evidence—and she provided no other corroboration. *Lozano*, 258 F.3d at 1166. Kandt didn't attest under oath that she didn't receive the email in August 2023. Instead, she merely referred to an email string showing she inquired about the notice in June 2024. *See* Doc. 35-2. The final email in the string, sent by Kandt on June 13, asks the EEOC Enforcement Supervisor, Stephanie Williams, to confirm this was Kandt's first receipt of the right-to-sue letter. Such a request suggests a potentially self-serving purpose—to establish the later start date for her 90-day window. Using this as evidence, without "further corroboration," doesn't suffice to overcome the presumption of receipt. *Lozano*, 258 F.3d at 1166.

For these three reasons, the court thus concludes presumption of receipt in August 2023 is appropriate on these facts. Undeterred, Kandt argues her new claim's still timely—even with the presumption established by law. She contends equitable tolling is warranted here and that such tolling saves her added claim. Doc. 38 at 3–5. The city disagrees.[2] Doc. 39 at 2. It

---

[2] The city centers its arguments against equitable tolling on *Panicker*. 712 F. App'x 784. It cites *Panicker* for the proposition that plaintiff must establish she bears no fault for her nonreceipt. *See* Doc. 39 at 1 ("[A] facially untimely claim should not be excused under equitable principles where the plaintiff is to blame for the delay." (citing *Panicker*, 712 F. App'x at 785)). The parties spill much ink debating whether Kandt has established an absence of blame. *See* Doc. 37 at 4–6; Doc. 38 at 3–5; Doc. 39 at 1–2.

contends that plaintiff has failed to establish that she bears no fault for her nonreceipt. *Id.* And that failure precludes equitable tolling. *Id.* The court takes up the equitable tolling issue, next.

### B. Equitable Tolling

A trial court is within its sound discretion to toll the 90-day period for suit. *Panicker*, 712 F. App'x at 785 (citing *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010)). But courts shouldn't use equitable tolling to hear cases Congress meant to exclude based on a "vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Courts generally don't toll the Title VII filing limits unless (1) the plaintiff was actively deceived or misled; (2) the plaintiff's past employer, state or federal agency, or the court lulled the plaintiff into inaction; or (3) something extraordinary stopped the plaintiff from asserting her

---

And the city identifies this blame question as the "sole issue the parties appear to disagree about[.]" Doc. 39 at 1. But the court concludes it needn't reach *Panicker*'s blame issue here, as explained below.

In *Panicker*, our Circuit concluded that a presumption of receipt didn't apply in that case. 712 F. App'x at 786. That was because the parties agreed plaintiff never had received the right-to-sue letter. *Id.*

> Generally, when the EEOC mails a right-to-sue letter, "federal courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Lozano v. Ashcroft,* 258 F.3d 1160, 1164 (10th Cir. 2001) (collecting cases). Here however, Panicker does not dispute that the EEOC mailed the right-to-sue letter on February 12, 2014 (he alleged as much in his Second Amended Complaint), and [the former employer] has not disputed his allegation that he never received the letter because it was sent to an incorrect address. The presumption of receipt is therefore not germane to our inquiry regarding timeliness. *See id.* (explaining that the presumption applies "[w]hen the receipt date for an EEOC right-to-sue letter is unknown or disputed"). We must instead assess the reason that Panicker did not receive the letter.

*Id.* With nonreceipt established, the Circuit moved on to analyze the reason plaintiff didn't receive the letter—and whether it was plaintiff's fault. The reason for nonreceipt in *Panicker* is that plaintiff signed off on the wrong mailing address. *Id.* at 787. So, *Panicker* concluded, plaintiff was to blame for his nonreceipt. And the Circuit decided that equitable tolling doesn't apply when a plaintiff is to blame for nonreceipt, *i.e.*, by providing an incorrect address. *Id.* at 786 ("[A]n aggrieved person cannot escape the consequences of nonreceipt when the failure to receive a right-to-sue letter is his own fault.").

The current case is different. Here, the parties dispute receipt—unlike in *Panicker* where the parties agreed plaintiff never received the right-to-sue letter. In such a dispute, presumption of receipt applies. So, the court needn't address *why* plaintiff didn't receive the letter or analyze who's to blame for nonreceipt. It presumes she received it. The court thus declines to enter the blame game here.

13

rights. *Biester v. Midwest Health Serv., Inc.*, No. CIV.A. 94-2034-GTV, 1994 WL 541827, at *3 (D. Kan. Sept. 23, 1994), *aff'd sub nom. Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264 (10th Cir. 1996). Courts construe these exceptions narrowly. *Biester*, 77 F.3d at 1267. Moreover, to benefit from equitable tolling, the aggrieved party must have acted diligently. *See Baldwin County*, 466 U.S. at 151. Finally, "it is the plaintiff's burden to establish reasons for equitable tolling[.]" *Barela v. Muniz*, 930 F.2d 32, 1991 WL 49741, at *3 (10th Cir. 1991).

Here, Kandt never claims that DOJ or EEOC actively deceived or misled her. Nor does she cite any extraordinary circumstances. Instead, Kandt argues she was lulled into inaction. Doc. 38 at 5. She identifies the August 17, 2023, email as support. Doc. 35-2 at 2. The email requested that Kandt "reply 'received' as acknowledgement." *Id.* But Kandt contends she didn't acknowledge receipt until June 3, 2024. Doc. 35-2 at 7. So, Kandt argues, DOJ's failure to follow up when Kandt didn't acknowledge receipt lulled her into inaction. Doc. 38 at 5.

The Tenth Circuit has found that plaintiffs can establish "lulled into inaction" in various ways. *See, e.g.*, *Martinez v. Orr*, 738 F.2d 1107, 1112 (10th Cir. 1984) (concluding plaintiff was "misled and lulled into inaction" when EEOC's right-to-sue notice didn't inform him that requesting reconsideration of his charge would forfeit his ability to sue in federal court); *Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir. 1983) (deciding diligent, pro se plaintiff entitled to tolling after relying on instructions from court clerk suggesting that his deadline to sue depended on how long it took him to get counsel). Commenting on *Martinez* and *Gonzalez-Aller*'s "lulled into inaction" holdings, the Tenth Circuit explained that "in both of these cases the employer or government agent provided inaccurate information in writing to the plaintiff concerning the filing deadlines. . . . The evidence in these two cases satisfied the 'active deception' test established in the earlier equitable tolling cases."

*Barela*, 1991 WL 49741, at *2 (10th Cir. 1991). Lulling into inaction thus intertwines, at least in part, with active deception. *See, e.g.*, *Baker v. Key Maint., Inc.*, No. 18-CV-00543-TCK-JFJ, 2019 WL 2223100, at *4 (N.D. Okla. May 22, 2019) ("Plaintiffs have alleged no circumstances that would demonstrate any deception at all, much less the active deception necessary to lull them into inaction."). And "lulled into inaction" assumes some level of affirmative misconduct or design. *See Brough v. O.C. Tanner Co.*, No. 16-CV-1134 TS, 2017 WL 1102622, at *3 (D. Utah Mar. 23, 2017) ("Even where the defendants induced the plaintiff to refrain from filing suit to permit time to make a settlement offer, equitable tolling has been denied where there is no evidence that defendants' actions *were designed* to lull the plaintiff into inaction." (emphasis added)); *id.* ("In sum, to warrant equitable tolling, Plaintiff must allege sufficient facts to establish that Plaintiff's untimely filing was caused by Defendant's affirmative conduct intended to cause such delay."); *see also Baldwin County*, 466 U.S. at 151 ("[A]ffirmative misconduct on the part of a defendant lulled the plaintiff into inaction.").

Here, Kandt identifies no authority—and the court has unearthed none—indicating that EEOC or DOJ lulls a plaintiff into inaction if it doesn't follow up to confirm receipt of a notice. Nor does Kandt allege the kind of "active deception," "affirmative misconduct," or design typically associated with lulling. DOJ just didn't follow up with Kandt when she failed to acknowledge receipt. That's it. An absence of follow-up hardly qualifies as conduct "reasonably *calculated* to lull [Kandt] into inaction." *Robinson v. Hartford Underwriters Ins. Co.*, No. CIV-06-428-T, 2006 WL 8436425, at *7 (W.D. Okla. Oct. 5, 2006) (emphasis added). And recall that the court must construe this lulled to inaction exception narrowly. *Biester*, 77 F.3d at 1267.

Kandt also hasn't shown the requisite diligence necessary to benefit from equitable tolling. *See Baldwin County*, 466 U.S. at 151. A plaintiff must "'assume some minimum responsibility . . . for an orderly and expeditious resolution of his dispute.'" *Panicker*, 712 F. App'x at 788 (quoting *Million*, 47 F.3d at 388). Kandt filed her second charge with the EEOC on April 23, 2023. Doc. 35 at 2 (Second Am. Compl. ¶ 9). Then she allegedly heard nothing until she checked back with the EEOC in June 2024—over 13 months later. Doc. 38 at 1. Waiting more than a year to check-in doesn't suggest diligence. Exacerbating that lack of diligence is Kandt's prior dealings with EEOC charges and letters. A span of 13 months from charge to letter constituted a very different timeline than she experienced with her first charge and right-to-sue letter. Namely, Kandt filed her first charge with the EEOC on August 21, 2022. Doc. 35 at 2 (Second Am. Compl. ¶ 8). She received her right-to-sue letter for that first charge five months later on January 17, 2023. *Id.* (Second Am. Compl. ¶ 10). This timeline should have given Kandt, at the very least, a ballpark notion of when to expect a second right-to-sue letter. It thus stands to reason that a plaintiff who "acted diligently," *Baldwin County*, 466 U.S. at 151, and "assumed some minimum responsibility" for her dispute, *Panicker*, F. App'x at 788 (quotation cleaned up), would have checked back with the EEOC much sooner.

Kandt hasn't convinced the court that DOJ lulled her into inaction. Nor has she asserted that the DOJ or EEOC actively deceived or misled her. She hasn't alluded to any extraordinary circumstances. Kandt thus satisfies none of the three narrowly construed exceptions that might justify equitable tolling. Plus, she didn't display diligence. And so, Kandt hasn't carried her burden to establish reasons for equitable tolling. The court thus declines to apply it. Presuming receipt and rejecting equitable tolling, the court concludes that Kandt's additional retaliation claim—based on the city's alleged failure to interview or re-hire her—is time-barred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Garden City's Motion to Dismiss Plaintiff's Additional Claims (Doc. 36) is granted.

**IT IS SO ORDERED.**

**Dated this 19th day of March, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
